Okay, our next case for argument is 21-1881 Emerson Electric v. SIPCO. Mr. Davis, please proceed. Good morning, Your Honors. May it please the Court. This appeal presents two issues. First, with respect to the term scalable address of at least one remote device, as recited in Claims 1 and 14 of the 492 patent, rather than apply this Court's construction as the Board was instructed to do on remand, as SIPCO itself admits, the Board instead decided to interpret this Court's prior findings and add a negative limitation that categorically excludes anything called a type byte or a type code from being part of that scalable address of at least one remote device. And in doing so, this Court looked back at its prior findings regarding the broadcast individual address of Johnson. And that particular addressing scheme is depicted on page 22 of the blue brief, figures 32 and 43. As you can see in that addressing scheme, the address has two components, an NSM type, which is optional, and an NSM address, which is always there. The NSM type is 8 bits long. When it's present, the NSM address is 32 bits long. But together, that address is either 32 bits or 40 bits long, depending on whether the NSM type is needed. But because Johnson uses the word type to describe that portion of the address, the Board on remand looked at that and said, well, type is categorically excluded, and I can't rely on that. And so that Court reversed its prior findings, applying an applying this Court's prior construction to determine whether or not that limitation was met. And while this Court had previously examined an embodiment from the 492 patent that did, in fact, discuss a type byte, that type byte was used to identify whether the message was to all recipients, some recipients, or one recipient. It was not, as this Court requires, used to identify the particular recipient, unlike the NSM type portion of the address, which is required, as the Board found, to identify the particular recipient. Let me make sure I understand your argument. Your argument is that when type code is a field which is necessary to identify the unique recipient, it can be part of the scalable address. When type code is not necessary to identify the extraneous information that isn't directing the address, then it doesn't have to be part of the scalable address code. Is that basically it? Yes, precisely, Your Honor. And that is precisely the situation here, as the Board itself expressly found on remand. This is at Appendix 19 to 20. The Board explains, as petitioner contends, and this is a quote, in a system where there is only one type of NSM, an NSM can be targeted by using only NSM address as the unique destination address. If the system includes multiple types of NSMs, the system can use a combination of an NSM type and NSM address as the unique destination address, expressly making that underlying finding that's required to satisfy this Court's construction of that term, scalable address of at least one remote device. In fact, that operates just like an area code for a phone number. It used to be, at least a couple of years ago, you'd be able to dial a seven-digit number and dial only within your area code, because the system wasn't more complex for just looking at that one area code. But if instead you wanted to dial within a system with multiple area codes, you needed to include those additional three digits. Those additional three digits are part of that address. And based on those findings by the Board, which are undisputed, this Court should not only vacate the Board's findings, but reverse as to that finding and find that the scalable address of at least one remote device is expressly met by Johnson. That was the sole issue on appeal before. SIPCO didn't appeal any other issues as to the Johnson grounds with respect to Claims 1, 2, 3, 6, 7, 8. I don't understand how we could reverse. It seems to me that the Board made some fact findings, which I don't completely understand and maybe potentially are internally inconsistent, but when they found, although the NSM type field is optional, the empty bits are always present in the frame. When they made that finding, that is inconsistent with what you're asking me to be able to do on, in terms of reversing right now. That seems at odds with what you're requesting. Now, I'm not sure they're correct about that finding, but wouldn't the only proper course of action, if you are correct, be to vacate and remand with the application and have them apply it to Johnson? I don't see how I can decide whether the bits are always empty or always present or not present in light of the Board's statement to the contrary. Thank you for your question, Your Honor. I think if we look back at Figures 32 and 43, they provide the answer to both what the Board was saying there, as well as why this Court can reverse on this. As you can see, and there's other text in Johnson that we can point to as well, but as you can see in Figure 32, for example, when the NSM type is used, it's a 40-bit address. The network message is only 20 bits when the NSM type is used. When it's not used, those eight bits are reallocated elsewhere in the frame, as that sentence, Your Honor, that you're referencing expressly states. But to follow up on the Chief Judge's question, aren't you really saying that those two findings are at least the evidence with regard to Johnson and the statement by the Board that the bits are all filled in with zeros? Aren't they inconsistent, potentially, at most? And isn't that an inconsistency that the Board needs to straighten out? How could we? The words themselves, I think the Board is not clear on it, but when you look at what they say, they say that the bits are elsewhere in the frame. The frame is this entire thing. It's the whole block. So they're not saying that the bits are still part of the scalable address, which is, if they had made that finding, I would agree that it would need to go back down to them. They're instead saying they're elsewhere in the frame. They've just been moved, but they're no longer part of the scalable address. And that's further confirmed by the Board's express finding on Appendix 15 to 16, where it's saying the broadcast individual address is either 40 bits or 32 bits. Where in the Board's opinion, remind me, because I don't have it immediately at hand, where is it that they talk about the empty bits and make that finding? Do you have that? Page 17. 17, thank you. All right. And they say the petition at 62, I couldn't find that in the appendix. So is the petition, page 62, in the appendix somewhere that I'm missing? Because that would potentially shed light on what you're trying to tell me I should interpret this as. I can check the appendix, Your Honor. All right. How about he'll check the appendix, because otherwise, why is he sitting there at this point? Thank you. But what I would say is what they mentioned, and they say the same thing, I think, earlier on Appendix 16. They say although the NSM type, this is the Board, is optional, the empty bits are always present in the frame. That reference to empty bits is referring to those bits being moved over, as Johnson expressly teaches, to the network message portion of the overall frame. But they're no longer part of the scalable address. That is what the Board should have been examining. And I believe, Your Honor, the appendix does include. It does. Page 128. Yep. I'm just trying to figure out if I can glean, since the Board cited the appendix petition, page 62, or cited the appendix, if I can glean anything from that citation that would lend any insight into what you're telling me. The plain language of what they said is at odds with what you're saying, quite frankly, and so I'm trying to see if there is something that they cited that would lead me to conclude that they meant something different than what they clearly said. Is there something on that page? Another portion of Johnson. So if you look at that page, it cites about the eighth or seventh line down, column 55, lines 40 to 47 in Johnson. That's appendix 842. And what Johnson expressly teaches there is that... I'm sorry, slow down. On page 62? Page 62, appendix 128. You want me to look at what on page 62, where it says if the system is larger and more complex, that sentence? Just right before there, there's a cite to column 55, lines 40 to 47. Instead, an NSM can be targeted by using only N-S-M-A-D-R as the destination address? Correct, Your Honor. Why does that sentence tell me what you want me to conclude, which is the empty bits are not always present? That citation, Your Honor, to column 55, lines 40 to 47, is a citation to Johnson itself. And what Johnson explains there, this is at appendix 842, is that the network message... Now, interestingly, just to be clear, that's not what the board cites. Look, page 17 of the appendix, they point to petition 62, and then they tell us what things they want us to look at. And you notice the portion of Johnson you'd like me to point me to, you'd like to point me to, to understand what you say the board meant isn't what they cite. Yes, Your Honor, you're correct. I was looking at the prior page. They're correct. They don't cite that portion of Johnson. I don't see how you can get a reversal. I'm still not with you on the idea that I could somehow overlook that statement of the board, which is complex and confusing to me, but nonetheless seems like a fact-finding based on what the prior art discloses. Your Honor, I think that the support had run into a similar situation in Smith and Nephew versus Rhea, where the facts were largely undisputed. There was some additional facts that needed to be addressed. This court did take those facts on. I think the other sentences in the board's opinion... So, because some panel of this court, which I'm hoping I wasn't on, because according to you they made fact findings that were disputed, I should do that too? Your Honor, I think... Tell me I wasn't on the earlier panel. You were not. Well, that's at least good for me. But, Your Honor, the difference here is that the board's other sentences in this opinion below on remand do make clear that the scalable address varies between 40 and 32 bits, and so that those empty bits, if you will, using their own words, are no longer part of the scalable address. If there's ambiguity in this one sentence that we're talking about out of appendix 17 or 16, it is clear in other parts of the board's findings. I'm not a computer scientist, but what, to you or to a person skulling the art, does the term empty bits mean exactly? If what the board meant by that was that those were null bits, meaning they were still there, but they're just not... Yeah, that's what I assumed they meant. There's no support... Are you suggesting that's not what they meant? I think it's unclear because there's no support for that notion anywhere in the record. Well, if it's unclear, isn't that something they should clarify? Other portions of the board's opinion itself will make it clear that it's either 40 or 32 bits. So those other sentences at appendix 15... But the problem is you would like us to read, Johnson, which I think is probably the correct reading, but I'm not a fact finder, that the empty bits are actually not empty, but rather reassigned and repurposed for other purposes. That's probably a good argument, but it seems inconsistent with what the board said, and maybe if only, man, they were to focus on this exact issue, they can figure out whether they think Johnson discloses bits that are empty or bits that are repurposed. Yeah, I take your point, and... But you're telling, in response to me, you're saying that the term empty bits, a person skulling the art would not to mean that they are bits they just don't carry into any information. I'm telling you, Your Honor... They're present, but not acting in any functional way. Read in the context of the entire opinion... I understand, but the term empty bits... Taking an isolation, yes, I think taking an isolation, it would mean those that aren't repurposed. Okay, yeah, they weren't repurposed. And I would just note, Your Honors... You wanna save me any rebuttal time? Because you can keep noting, but you won't have any time left. Yeah, thank you, Your Honors. I just wanna note with respect to Claim 10, the scalable address field limitation is quite different from Claim 1 and 14, and the supports for prior construction expressly didn't apply to that, and at least the Johnson would be met by that term as well. Thank you, Your Honors. Okay, Mr. Goncalves? Yes. Please proceed. Good morning, my name is Dr. Gregory Gonsalves, representing SIPCO, the appellee. Emerson is essentially arguing that the Board's final written decision on remand should be vacated because it has a different understanding and interpretation of the Johnson prior up reference than the Board has, but the Board's decision should be affirmed because its understanding and the interpretation of Johnson is certainly supported by substantial evidence. For example, the testimony of patent owner's expert Dr. Kevin Almaroth supports the Board's factual findings as to what Johnson would have taught to a person of ordinary skill in the art, and could you please turn to page 2204 of the Joint Appendix, which is Dr. Almaroth's declaration. As he explains, the NSM address field in Johnson's figure 43 must be present and always has a fixed size of 32 bits. The NSM type is optional. He goes on to say in paragraph 125 that the claim limitation of a receiver address comprising a scalable address of the at least one remote device cannot be satisfied by a showing that Johnson's destinations may contain an optional field like the NSM type. Rather, the limitation can only be satisfied if the address of the remote device itself is scalable. And then please turn to the next page. Counsel, I don't understand what your argument is. Are you trying to focus on the substantial evidence question of what Johnson discloses, or are you trying to focus on the claim construction issue of what needs to be or can be included in the scalable address? Okay, right now I'm talking about substantial evidence to support the Board's factual finding that Johnson would not have taught this particular claim limitation. I have some comments on the claim construction itself that I'll refer to later. Well, I think that you should start with claim construction, because if the claim construction, if the Board got the claim construction wrong, I think you might be, maybe I'm wrong, but I think you might be spinning your wheels, spending your time on whether substantial evidence supports the Board's findings under the existing claim construction. Well, you know, I can talk about the claim construction also, and I guess I'll go to that based on your suggestion. So, Emerson's allegations that the Board did not apply this for its claim construction and had a negative limitation, which it says, said today, are simply not true. The Board cited and quoted to the Court's opinion on claim construction several times in its final written decision on remand, and this is at pages 6, 7, 8, 10, and 11. I mean, basically, it copied the Court's claim construction from this Court's opinion. So, I'll see how it could be accused of not applying this Court's claim construction when it copied it. Both the Board and this Court stated that the address of the transceiver and the receiver address must be scalable, and that the presence or absence of a device-type field in a receiver address does not mean that the transceiver address itself is scalable. And so, when you take that claim construction, both from this Court and the Board, and you apply it to Johnson, and you look at the evidence that the Board considered in making its determination that Johnson does not, not have taught this claim limitation, there is substantial evidence to support that one's finding. I guess, counsel, I don't understand our prior decision to have decided whether a type field in the circumstances in which it is necessary to identify the unique address is, in fact, excluded from what could be part of or should be part of the scalable address. I understood our prior opinion to define the scalable address in a functional way. Is that not your understanding of it? That's how I understand your, the Court's opinion on claim construction, and I don't think the Board put in its final written decision on remand differs from that. I think it closely adhered to this Court's construction. And so, what I'd like to explain to you is there is substantial evidence supporting the Board's decision that... Well, I mean, before you get to substantial evidence, though, you actually have to convince me the Board's claim construction is right, and I'm still not actually with you. So, I would suggest you continue to devote your time to that issue, because I understood our prior decision to be saying the scalable address is not the entire two address. It's only the portion of the two address, which allows you to direct or identify the unique recipient. And if the type field is necessary to identify the unique recipient, I don't understand why it's not part of the scalable address under our definition. Okay, well, that's exactly the point, is that So, first of all, I thought the Board's opinion, and this Court's opinion on claim construction, were the same, because both said, as you just indicated, that the address of the transceiver within the receiver address, which you referred to as the two address, that that must uniquely identify the transceiver. And the antecedent type is a type field, which is in Johnson, and it's not used to identify a transceiver. And that's what the Board found, and that finding is supported by substantial evidence. So, I think that we agree on claim construction. That's why I want to go to the expert. So, is it your view, then, that the claim construction is correct when you say the NSM type field, or a type field in general, could be part of the scalable address, which is itself a component of the receiver address? Is that a correct understanding by you of the claim construction in this case? Yeah, I think what you said is correct. I think both the Court, as well as the Board, indicate that this particular scalable address limitation is limited to only that field that uniquely identifies the transceiver. And so, if it's not identifying the transceiver, then it's not part of the claimed scalable address. Let me make sure I understood your answer to the Chief Judge's earlier question. You're saying that the type signal can be associated with and part of the scalable address in some circumstances. Is that what you're saying, or no? Well, I think the Court's opinion made it clear that only if a field is used to uniquely identify a transceiver should it be considered to be part of a scalable address. But if it's necessary to identify the unique receiving party to add a type signal, is the type signal then part of the scalable address? I think any data that is used to identify a transceiver should be considered to be part of the scalable address. But there's substantial evidence in the record from Dr. Al-Murad's testimony that the fields that they're pointing to as identifying the transceiver are not in fact used to address the transceiver. And that's what I was about to discuss. Counsel, I guess I will tell you that I read the Board opinion differently and the dispute on appeal differently than you're articulating it now. If you're looking at page 11 of the Board's decision, which is at appendix 11, it explains that the Federal Circuit made clear this is not a correct construction of scalable address. We do not read the claim as Petitioner suggests. Petitioner suggests that the portion of transceiver address that identifies the unique recipient or recipients cited by the Federal Circuit can include a type identifier. We disagree. That seems very absolute. You're saying it can include a type identifier if it identifies the unique transceiver, but that doesn't seem to be what the Board held. The Board seems to have held it can never be a part of the scalable address. And they attribute that to our prior opinion. Well, I think what the Board is saying here is that an identifier of a device is not an address and it's not used to uniquely identify. When you consider the whole paragraph, the Board is saying if it's not used to uniquely identify the remote device, then it's not the scalable address that's recited in the claim. And so the idea is, is there substantial evidence to support the Board's factual finding that Johnson would not have taught a scalable address? Okay, so just in case I read the Board's opinion differently than you do, and I think the Board erred in its claim construction, just in case, you know, what would be the correct course of action for me under those circumstances? Okay, it's difficult for me to answer this question because I think that the Board's opinion on claim construction is consistent with this Court's opinion. Okay, but suppose I don't agree and suppose I believe the Board took a very absolute position that the scalable address can never include the type identifier and suppose that I think that's wrong. What would you have me do then? Okay, even if that's, even if you interpret it that way, it doesn't matter because these particular fields disclose that Johnson do not not use to uniquely identify the transceiver. And there's substantial evidence in the record indicating that it's not used for that purpose. Okay, what is the substantial evidence that you'd like to point to that the NSM type code in Johnson does not help route to a unique transceiver? Okay, so if you can turn to page 2205 of the appendix, and that's part of Dr. Ralmore's declaration, and first he shows at the top of the page is the figure 35 showing that the NSM address is always fixed at 32 bits and that you have a resulting address space of four billion NSMs that are possible. Okay, I did, I asked you to show me the transceiver. Can I ask you, did the board make this fact finding? Did the board actually find that the NSM type disclosed in Johnson does not route or is not part of the identity necessary to route something to a unique recipient? Did the board make that fact finding? I understand you're telling me there's substantial evidence for that conclusion and I know that your expert did provide such testimony, but the make that fact finding? So I think it did because even in the initial final written decision, the board made the determination that the broadcast individual message that the account is relying on here, even in its initial final written decision, it said that that particular addressing scheme does not disclose the scalable address. And again here, what's on appeal to us is the final decision. Where in the final decision would you, could you point me to understand that the board found that the NSM type address code in Johnson doesn't do anything to direct the message to a particular recipient? Okay, so if you look at the 15. 15 did you say? Yeah, the final written decision on remand, page 15 of the joint appendix. Okay. And there the board is explaining that Johnson discloses three types of designation addresses of an NSM. Broadcast, the class, broadcast, broadcast individual, and a key addressing scheme. Okay, broadcast individual is what the appellant is relying on here. And then the very next paragraph at the top of page, first full paragraph at the top of page 16, it says patent owner argues that each of these individual schemes does not exemplify a scalable address. And it cites to the patent owner response at 29 and 35. And then it says we agree. Now if you look at the patent owner response at pages 29 to 35, what's in there is citations and quotes from Dr. Amarant's declaration explaining why these fields are not used to uniquely identify a transceiver. So that is the factual finding in the board's decision. And that's why I was referring to the same testimony in Dr. Amarant's declaration that the board referred to. The board response at pages 29 and 35. But I can tell you right now, Dr. Amarant knows a lot more than I do about networking. So what's in those pages is his testimony. And I cited to it repeatedly. Okay, well, counsel, we're out of time. So I'm going to have to turn to your opposing counsel. I think he's got a little bit of time. You know, before we start the time, well, okay, go ahead and start the time. You only have one minute left. So I just want you to focus on whether or not the board decided that Johnson's NSM type does or does not direct the message to the recipient. Yes, Dr. Amarant, the board actually states in two places itself. I think the best place is at appendix 19 to 20, where the board states expressly, according to petition, if the system includes multiple types of NSMs, the system can use a combination of NSM type and NSM address as the unique destination address, definitively saying that NSM type is used to identify the particular recipient satisfying this court's prior construction. So I take it that what you would say with respect to the material on Act 16 is that that goes not to the question of whether type is part of the address, but whether it's part of a scalable address because of what the board says about the empty bits. Is that a fair summary of what your position is? Yes, in part, Your Honor, except that the type bits that are no longer used are instead reallocated to the network. Well, I understand that's your position as to why the board is wrong, but what I'm trying to see is why it is that the section on page 16 is consistent in your view with what the board says on the later pages that you just cited. And I think I understand that you're saying the reason is because the board erroneously, in your view, said empty bits are always present. Correct, without any support from Dr. Elmore or anybody else. Thank you, Your Honor. Thank you. The case is taken under submission.